## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

ALPHONSO WHIPPER,
*Plaintiff*,

v.

(JANE) ANGELL,
*Defendant*.

No. 3:21-cv-1157 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Alphonso Whipper is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* under 42 U.S.C. § 1983 against Correctional Officer Angell, seeking damages for her alleged violation of his First, Fifth, and Fourteenth Amendment rights.[1]

For the reasons set forth below, I will allow Whipper's First Amendment individual capacity claim to proceed against Officer Angell.

### BACKGROUND

At the time relevant to this action, Whipper was housed at the DOC Cheshire Correctional Institution, where Officer Angell was employed as a correctional officer.[2] Officer Angell is sued in her individual capacity only.[3]

On December 14, 2020, Whipper was housed in South Block 2, cell 46, which is located directly above another block of cells.[4] Prisoners housed in South Block 2 are generally "misconduct free," and many participate in employment and college programs and have already

---

[1] Because Whipper refers to the defendant as "(Jane) Angell," it is possible he does not know the defendant's first name and has substituted the generic name "Jane" as a placeholder.
[2] Doc. #1 at 2–3 (¶¶ 4–5).
[3] *Ibid.* (¶ 5).
[4] *Id.* at 3 (¶ 6).

1

been serving time for many years.[5]

During recreation that day, Whipper visited another inmate housed in the block of cells directly beneath his own.[6] Whipper held several compact discs in his hand and invited the other inmate to select one.[7] As Whipper was passing one of the discs under the inmate's cell door, Officer Angell arrived and directed her flashlight beam into Whipper's face.[8] She informed Whipper that he did not have permission "to pass anything."[9] Whipper showed Angell the contents of hands and noted that he only had compact discs.[10] Angell responded that she did not care.[11] After Whipper stated that he had never received a complaint from any other prison official about passing compact discs, Angell became upset and stated "Well, that's my rule!"[12] She ordered him to "get off the door."[13] Whipper was momentarily dumbfounded by her overreaction and decided that he should file a grievance about her hostility to prevent any future harassment.[14] He promptly obtained grievance forms at the Officer's Desk.[15]

In the meantime, Officer Angell had continued her tour.[16] As Whipper proceeded to his cell with the grievance forms, he met Officer Angell coming from the opposite direction.[17] After Whipper stepped out of Angell's path, he asked if Angell had two Ls in her name as he gestured with his left hand toward her name tag.[18] When she answered in the affirmative, Whipper

---

[5] *Ibid.* (¶ 8).
[6] *Ibid.* (¶ 9).
[7] *Id.* at 4 (¶ 10).
[8] *Ibid.* (¶ 11).
[9] *Ibid.* (¶ 13).
[10] *Ibid.* (¶ 15).
[11] *Ibid.* (¶ 16).
[12] *Id.* at 4-5 (¶¶ 17–18).
[13] *Id.* at 5 (¶ 20).
[14] *Ibid.* (¶ 21).
[15] *Ibid.* (¶ 22).
[16] *Ibid.* (¶ 23).
[17] *Id.* at 5-6 (¶ 24–25).
[18] *Id.* at 6 (¶ 26).

thanked her while waving slightly with his left hand.[19] Officer Angell turned to obstruct Whipper's path and asked, "What's your  problem?"[20]

Whipper indicated that he did not want to talk and just wanted to write his grievance, but Officer Angell again yelled, "What's your problem."[21] Whipper held up both of his hands, palms forward to show that he did not seek a confrontation with Angell.[22] He repeated that he just wanted to write his grievance.[23] Angell responded, "Well, go ahead and write your grievance. Good luck."[24] Whipper responded, "Oh, I know what I'm doing."[25] Officer Angell questioned whether his statement was a threat, but Whipper did not respond and entered his cell to start writing his grievance.[26]

Officer Angell had departed to finish her tour when Lieutenant Quinn arrived at Whipper's cell, apparently at the request of Officer Angell.[27]  Lieutenant Quinn informed Whipper that Officer Angell had accused him of threatening an officer's safety and, consequently, that Whipper would be taken to the Restrictive Housing Unit ("RHU").[28] Whipper denied threatening Officer Angell and explained to Lieutenant Quinn that Officer Angell was "clearly retaliating" against him for initiating the grievance process, but his protests were to no avail.[29] Whipper was escorted to the RHU and stripped naked by six officers, all while being recorded.[30] Officials charged him with making threats—including to an officer's "safety and security"—and subjected him to a "profile request"—that is, a request to transfer him to another

---

[19] *Ibid.* (¶¶ 27–28).
[20] *Ibid.* (¶ 29).
[21] *Id.* at 6–7 (¶¶ 30–31).
[22] *Id.* at 7 (¶ 32).
[23] *Ibid.* (¶ 33).
[24] *Ibid.* (¶ 34).
[25] *Ibid.* (¶ 35).
[26] *Ibid.* (¶¶ 36–37).
[27] *Id.* at 7–8 (¶¶ 38–39).
[28] *Id.* at 8 (¶¶ 40–44).
[29] *Id.* at 8–9 (¶¶ 43, 45–46).
[30] *Id.* at 9 (¶ 47).

facility.[31]

During the next few days, Whipper wrote to DOC administrators in an effort to prepare for his defense.[32] He requested preservation of security footage; called his attorney; took steps to protect his entitlement to file grievances; and sought to have his charge adequately defined.[33] After six days he was notified that there had been a "process failure" and the charge against him was being dismissed.[34] No staff member identified the nature of the "process failure."[35] Whipper spent a total of six days in the RHU.[36]

Dismissal notwithstanding, Whipper continued to suffer adverse consequences from Officer Angell's charge against him. He was stripped of his prison job, and he was informed that he might be transferred out of the facility due to safety and security concerns.[37] He was then moved to a cell where one of the former inmates had tested positive for COVID-19.[38] Whipper inherited that man's cellmate, who had not yet tested positive.[39]

One week later, Whipper and his new cellmate both tested positive for COVID-19.[40] During his quarantine, Whipper was moved approximately five times during a 45-day period.[41] At the time, Whipper was taking college courses and had to submit his final term paper after the conclusion of the semester due to his illness and the stress of the circumstances.[42] He had to accept a credit in place of a letter grade as a result.[43]

---

[31] *Ibid.* (¶¶ 48–49).
[32] *Ibid.* (¶ 50).
[33] *Ibid.*
[34] *Id.* at 9-10 (¶ 51).
[35] *Ibid.*
[36] *Id.* at 1 (¶ 1).
[37] *Id.* at 10 (¶¶ 52–53).
[38] *Ibid.* (¶ 54).
[39] *Ibid.*
[40] *Ibid.* (¶ 55).
[41] *Ibid.* (¶ 56).
[42] *Id.* at 10-11 (¶¶ 56–57).
[43] *Id.* at 11 (¶ 57).

Whipper requested to have his privileges restored and to have an opportunity to review the video footage so that it could be compared against Officer Angell's false narrative.[44] It is not clear whether Whipper was himself allowed access to the video, but Deputy Warden Nunez did review the footage, after which Whipper's privileges were restored and Whipper was returned to his former cell block.[45] Whipper also returned to his job, but he discovered that another inmate had been promoted in Whipper's absence, and Whipper's former position was no longer available.[46]

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).[47]

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—to give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation for a *pro se* complaint, a complaint will

---

[44] *Ibid.* (¶ 59).
[45] *Id.* at 12 (¶ 62).
[46] *Ibid.* (¶ 63).
[47] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Whipper brings his claims under 42 U.S.C. § 1983. Because he is seeking to recover money damages from Officer Angell in her individual capacity, Whipper must allege facts showing her "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013).

Whipper's constitutional claims arise from Officer Angell's allegedly false disciplinary charges against him. A "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). But there are "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015); *see also Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) ("[An] inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights."). Here, Whipper asserts that Officer Angell issued her disciplinary report in retaliation for Whipper's exercise of his First, Fifth, and Fourteenth Amendment rights.[48]

### First Amendment Retaliation

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Perez v. Cook*, 2020 WL 3893024, at *5 (D. Conn. 2020). "To establish a First Amendment retaliation claim, [Whipper] must show (1) that the speech or conduct at issue was

---

[48] Doc. #1 at 12–15 (¶¶ 66–67, 71–72, 76–77).

protected, (2) that the [official] took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). The adverse action must have been serious enough to "deter a similarly situated individual of ordinary firmness from exercising his constitutional rights." *Fabricio v. Annucci*, 790 F. App'x 308, 311 (2d Cir. 2019). "The filing of grievances clearly constitutes protected activity." *Dehaney v. Chagnon*, 2017 WL 2661624, at *3 (D. Conn. 2017).

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation— can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). For this reason, a prisoner's First Amendment retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Ibid.*

In his complaint, Whipper alleges that Officer Angell issued a false disciplinary charge against him after she became aware that he was going to file a grievance regarding her conduct.[49] Because Whipper's allegations plausibly suggest that Officer Angell sought to obstruct his First Amendment right to file a grievance by issuing false disciplinary charges against him, I will permit this claim to proceed against Officer Angell in her individual capacity.

### Fourteenth Amendment Claim

Whipper brings additional claims under the Fifth and Fourteenth Amendments. Because the Fifth Amendment applies to the federal government rather than to the states, I will construe

---

[49] *Id.* at 7–8, 14–15 (¶¶ 34–45, 71–72, 76–77).

both claims as seeking to proceed under the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

Whipper's Fourteenth Amendment claim duplicates his First Amendment claim. Whipper asserts that he "had a Fourteenth Amendment right to grieve," that Angell "was aware that plaintiff was exercising that right," and that Angell "created a false charge against plaintiff in retaliation of plaintiff's exercise of his right to grieve[.]"[50] While the Fourteenth Amendment's Due Process Clause protects persons against deprivations of "life, liberty, or property, without due process of law," U.S Const. amend. XIV, § 1, it is the First Amendment that expressly protects "the right . . . to petition the government for a redress of grievances." U.S. Const. amend. I. Because Whipper's Fourteenth Amendment claim is wholly duplicative of his First Amendment claim, I will not permit Whipper to proceed with his Fourteenth Amendment claim, at least insofar as it sounds in retaliation.

To the extent that Whipper intended to bring a claim under the Due Process Clause of the Fourteenth Amendment, he has failed to state such a claim, as his complaint alleges no facts to suggest that he was disciplined without adequate due process as a result of Officer Angell's false report. *See Willey*, 801 F.3d at 63; *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (to state a claim for violation of procedural due process, plaintiff must allege (1) deprivation of a constitutionally protected liberty or property interest, and (2) that the procedures followed by the state were constitutionally insufficient). Whipper complains that he was moved to the RHU for six days and that he lost his prison job as a result of Angell's actions, but neither deprivation implicates a protected liberty or property interest. An inmate has no constitutional right to a job, *Lewis v. Sieminski*, 2010 WL 3827991, at *6 (D. Conn. 2010) (citing *Gill v. Mooney*, 824 F.2d

---

[50] *Id.* at 15 (¶¶ 76–77).

192, 194 (2d Cir. 1987)), and courts in the Second Circuit have routinely held that confinement in restrictive housing for a period of 30 days or less does not constitute an "atypical and significant hardship" sufficient to implicate a constitutional liberty interest. *See Solek v. Naqvi*, 2016 WL 7427213, at *3 (D. Conn. 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995)). Even assuming that he has been deprived of such an interest, Whipper fails to explain how the process afforded him was constitutionally insufficient, especially given that the disciplinary charges against him were dropped and that his privileges and housing assignment were ultimately restored.[51]

Because he has failed to state a claim that is not duplicative of his First Amendment claim, I will dismiss Whipper's Fourteenth Amendment due process claim.

### CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Whipper's claim of First Amendment retaliation may proceed against Correction Officer Angell in her individual capacity for damages. All other claims are DISMISSED.

(2) If Whipper believes there are additional facts he can allege that will overcome any of the deficiencies identified in this ruling, then he may file a proposed amended complaint within **30 days** of this Order's filing date that alleges those facts or properly names such persons or entities in the case caption.

(3) Because Whipper has paid the fee in this case, and he has not been granted *in forma pauperis* status, he is responsible for serving the complaint on Correction Officer Angell in her individual capacity within **90 days** of the date of this order pursuant to Rule 4, Fed. R. Civ. P. If Whipper has questions about service of the complaint, he may contact the Inmate Legal Aid

---

[51] *Id.* at 9–10, 12 (¶¶ 51, 62).

Program ("ILAP"). Failure to effect service within the time specified may result in the dismissal of this action as to a defendant who has not been served.

The Clerk is directed to send Whipper instructions for service of the complaint on the defendant in her individual capacity, together with one copy of the complaint, one copy of this order, one blank Notice of Lawsuit form, and one blank Waiver of Service of Summons form.

(4) **Whipper shall effect service of the complaint on Correction Officer Angell in her individual capacity by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to the defendant. Whipper shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to the defendant in her individual capacity. He shall also file the signed Waivers of Service of Summons forms that he receives from the defendant in her individual capacity with the Clerk.**

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(6) Defendant Angell shall file her response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to her.

(7) The discovery deadline is **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this Order. The order can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties

should file the appropriate motion to compel on the docket.

(8) All motions for summary judgment shall be filed within **seven months (210 days) from the date of this Order.**

(9) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(10) If Whipper changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Whipper must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Whipper has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Whipper should also notify the defendant or defense counsel of his new address.

(11) Whipper shall utilize the Prisoner E-Filing Program when filing documents with the Court. Whipper is advised that the Program may be used only to file with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 18th day of November 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge